IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT MARK SCHMIDT, ET AL., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 1:18-cv-01472 (RDA/JFA) |
| FCI ENTERPRISES LLC, ET AL., | ) |
| Defendants. | ) |

## Order

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 67. Considering the Motion for Summary Judgment, Memorandum in Support, Opposition, Reply, and the parties' arguments, this Court DENIES the Motion for Summary Judgment for the reasons stated below. Dkt. Nos. 67, 68, 79, and 80.

### A. Background

At all relevant times, Plaintiffs were employed by Defendant FCI. Defendant FCI is a federal government contractor headquartered in Chantilly, Virginia, that provides engineering, cybersecurity, satellite communications, and information technology services to clients across the country.

Defendants John Bronson,[1] Robert Knibb, and B. Hagen Saville[2] purchased Defendant FCI in 2016 partially by personal investment and funded the balance through a subordinated seller note and a five-year loan from Branch Banking & Trust ("BB&T"). Dkt. 67-2. The

---

[1] Defendant Bronson retired effective September 28, 2018.

[2] These three Defendants were also members of the Board of Directors. Defendant Michael Gulino served as President and Chief Executive Officer of Defendant FCI.

BB&T loan was secured by the majority of FCI's assets. When the line of credit on the BB&T loan matured on July 27, 2018, attempts to renegotiate the loan began. The renegotiation period extended the due date on the note until October 4, 2018. On that date, upon the failure of payment on the extended note by Defendants, BB&T withdrew over $1.7 million from Defendant FCI's corporate bank accounts.

On October 8, 2018, Defendant Daniel Muse, Defendant FCI's Chief Financial Officer, sent all FCI employees, including Plaintiffs, an electronic mail communication notifying them that Defendant FCI was terminating all FCI employees; that terminations were retroactively effective as of October 5, 2018; and that Defendant FCI had to "cease operations." In a follow-up electronic mail communication on October 18, 2018, it was further explained that Defendant FCI was unable to satisfy its obligations to BB&T, that a restructuring agreement could not be reached, and thus, Defendant FCI had defaulted on its loan. The electronic mail communication also acknowledged that Plaintiffs were not paid from September 15 to October 5, 2018.

Plaintiffs initiated this suit against Defendants, alleging violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), in violation of 29 U.S.C. § 2101, *et seq.*, and the Fair Labor Standards Act ("FLSA Act"), in violation of 29 U.S.C. § 201, *et seq.* Dkt. 1. Defendants filed a Motion for Summary Judgment on both counts, which Plaintiff opposed. Defendants subsequently filed a reply. Dkt. Nos. 67, 68, 79, and 80.

### B. Standard of Review

"Summary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F.Supp.3d 612, 615 (E.D. Va. 2014) (quoting Fed.R.Civ.P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).

The movant bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F.Supp.2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgement, a Court reviews the evidence in the light most favorable to the non-moving party; here Plaintiffs. *McMahan v. Adept Process Servs., Inc.*, 786 F.Supp.2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). "[A]t the summary judgment stage[,] the [Court's] function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

C. Analysis

i. WARN Act

Defendants argue that they are not bound by the WARN Act, specifically contending that the WARN Act was not meant to protect employees like Plaintiffs, and that what occurred did not constitute a "plant closing."

Both determinations require statutory interpretation. If the statutory language is clear, the Court "must enforce it according to its terms." *Liverett v. Torres Advanced Enterprise Solutions LLC*, 192 F.Supp.3d 648, 651-52 (E.D. Va. 2016) (quoting *King v. Burwell*, 135 S.Ct. 2480,

3

2483 (2015)). If the statutory language is not clear, "this Court must next consider the regulations promulgated by an administrative agency that is charged with administering the statute. The Court must defer to an interpretation of the statute set forth in any such regulations as long as the interpretation reflects 'a reasonable construction of the statute.'" *Manzoor v. Chertoff*, 472 F.Supp.2d 801, 805 (E.D. Va. 2007) (internal citations omitted). Further, "a court generally must defer to an agency's interpretation of its own regulation if the regulation is ambiguous." *Id.* (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)).

The WARN Act "was enacted in 1988 to provide [written] notice of sudden, significant employment loss so that workers could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808 (4th Cir. 2007) (citing *Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 817 (9th Cir. 2007)). The WARN Act requires that certain employers "provide affected employees with sixty-days' notice of a plant closing or 'mass layoff.'" *Id.* (quoting 29 U.S.C. § 2102(a)). If such notice is not given, these employers are "liable to each affected employee for backpay, benefits, and attorney's fees." *Id.* (citing 29 U.S.C. § 2104(a)).

An "employer," for WARN Act purposes, is defined as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week." 29 U.S.C. § 2101(a)(1).[3] The undisputed facts suggest that Defendants at least meet the definition in 29 U.S.C. § 2101(a)(1). Thus, for consideration of this summary judgement motion, Defendant FCI is an

---

[3] 20 C.F.R. § 639.3 (a)(4) further explains that "[a]n employer may have one or more sites of employment under common ownership or control. An example would be a major auto maker which has dozens of automobile plants throughout the country. Each plant would be considered a site of employment, but there is only one 'employer,' the auto maker."

4

employer for WARN Act purposes. And, significant to this case, an "affected employee" includes "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff." Furthermore, 29 U.S.C. §§ 2101(a)(5). 20 C.F.R. § 639.3(e) specifies that *"managerial and supervisory employees"* are included in this particular group. (emphasis added). While it is true that a majority of the Plaintiffs earned salaries in excess of $100,000 and were employed in roles ranging from Vice President of Business Development, to Director of Human Resources, to Controller, to Senior Network Engineer, these Plaintiffs are still "affected employees" entitled to WARN Act protection despite Defendants' representations otherwise. Id.

Considering whether a "plant closing" occurred in this instance, a "plant closing" is "the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101 (a)(2).

It is without question that termination constitutes an "employment loss." 29 U.S.C. § 2101(a)(6)(A). And although Congress did not define "single site of employment," within the statute, the Secretary of Labor "promulgated interpretive regulations. . . [which] are entitled to 'controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Meson*, 507 F.3d at 808-09 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). 20 C.F.R. § 639.3(i) provides in pertinent part:

> (1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

\*\*\*\*

> (3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.
> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.
> (5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.
> (6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.
> ****
> (8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

Defendants argue that the termination of all FCI employees did not constitute a "plant closing". In this regard, Defendants argue that each off-site location in addition to the Chantilly location constituted a "single site of employment," thus at no "single site of employment" were over 50 FCI employees terminated.

The parties agree that Defendant FCI's headquarters was located in Chantilly, Virginia. Defendant FCI maintained several contracts with clients, including the federal government. FCI employees would often service those contracts on-site in locations such as: Fort Belvoir, the Pentagon, Fort Hood, Fort Sam, Lackland Air Force, Aberdeen, Maryland, Fort Meade, Colorado Springs, Colorado, Denver, Colorado, and Huntsville, Alabama.

In support of its arguments that the "single site of employment" test is not met, Defendants point to excerpts of certain deposition testimony and a particular payroll record to support their position. When one Plaintiff was asked in depositions about the number of employees that regularly worked at the Chantilly location, she responded that at least 35-40 FCI employees did so. Another Plaintiff noted that some offices at the Chantilly location were shared by two people. However, other deponents testified that all FCI employees ultimately reported back to the Chantilly location after servicing contracts on-site, and multiple witnesses testified that Defendant FCI employed over 100 people. With respect to information contained in the payroll record, it simply designates the "locations" where FCI employees worked. Dkt. 68-7. To be sure, the "conflict" in the payroll designations does not resolve the more critical inquiry as to whether these on-site "locations" actually served as "single sites of employment."

Ultimately, the relationship between Defendant FCI to these on-site locations remains at a minimum...unclear. And the number employed at the Chantilly location remains at best... uncertain. Thus, Defendants have not demonstrated that there is no genuine dispute of material fact, and they are not entitled to judgment as a matter of law. Accordingly, Defendants' Motion for Summary Judgment is DENIED with respect to the WARN Act claim.

ii. FLSA

Defendants next contend that they are not bound by FLSA requirements because as "executive, administrative or professional" employees, Plaintiffs are exempt from FLSA's protection. 29 U.S.C. § 213 (a)(1).

Generally, the Court notes that the FLSA requires payment of "a minimum wage and extra overtime compensation for employees who are not in certain categories, known as exempt employees." *Sutherland v. SOS Int'l, Ltd.*, 541 F.Supp.2d 787, 790 (E.D. Va. 2008) (citing 29

U.S.C. § 213 *et seq.*). "Importantly, due to the remedial nature of the FLSA, . . . exemption[s] [are] to be narrowly construed." *Smith v. Brennan*, 115 F.Supp. 3d 691, 698 (E.D. Va. 2015) (citing *Hantz v. Prospect Mortg., LLC*, 11 F.Supp.3d 612, 619 (E.D. Va. 2014)).

To establish a claim for non-payment of minimum wages under 29 U.S.C. § 206, a plaintiff must demonstrate that

> (1) plaintiff was employed by the defendant; (2) plaintiff was engaged in commerce or in the production of goods for commerce; (3) plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the applicable minimum wage; and, (4) none of the exemptions in 29 U.S.C. § 213 apply to plaintiff's position.

*Lagasan v. Al-Ghasel*, 92 F.Supp.3d 445, 455 (E.D. Va. 2015) (citing 29 U.S.C. § 206).

The first three criteria of the analytical framework do not appear to be in conflict. At issue is whether the "executive, administrative or professional" employee exemption applies to Plaintiffs. To qualify for that exemption, Plaintiffs must "be compensated on a salary basis at a rate of not less than $455 per week." 29 U.S.C. § 213 (a)(1) and 29 C.F.R. § 541.600(a). Defendants concede that Plaintiffs were not paid the minimum rate of $455 per week from September 15 to October 5, 2018. Accordingly, the exemption does not apply to Plaintiffs for that period of time.

*Scott v. Trustify Inc.*, is analogous. No. 1:19-cv-00032, 2019 WL 4198624 (E.D. Va. July 29, 2019), adopted 2019 WL 4195338. Defendant Trustify was a start-up technology company connecting private investigators with clients in and out of Virginia. Employee—plaintiffs earned annual salaries ranging from $42,000-$75,000. Trustify did not pay plaintiffs from November 1 to November 14, 2018. Acknowledging that the "executive, administrative, or professional" employee exemption may apply, the Court found that "[b]ecause defendants did not pay plaintiffs the federal minimum salary between November 1 through November 19, 2018, this

8

exception [did] not apply." *Id.* at \*6. Accordingly, the Court determined that defendant was in violation of the FLSA's minimum wage provision. This court finds the analysis in *Scott* to be sound.

Because Defendants are not entitled to judgment as a matter of law, Defendant's Motion for Summary Judgment is DENIED with respect to the FLSA claim.

Accordingly, Defendants' Motion for Summary Judgment is DENIED.

It is SO ORDERED.

The matter was well-presented by all counsel involved.

October 1st, 2019
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge