IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROBERT MARK SCHMIDT, ET AL.,       )
                                   )
    Plaintiffs,                    )
                                   )
    v.                             )   Civil Action No. 1:18-cv-01472 (RDA/JFA)
                                   )
FCI ENTERPRISES LLC, ET AL.,       )
                                   )
    Defendants.                    )

## **Memorandum Opinion and Order**

Plaintiffs sued FCI Enterprises, LLC ("FCI") in addition to FCI's corporate officers and owners after FCI ceased operations and terminated all of its employees. Plaintiffs sought relief under two alternative theories, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Worker Adjustment Retraining and Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.* Pursuant to the FLSA, Plaintiffs requested minimum wage for three weeks of unpaid work, and pursuant to the WARN Act, Plaintiffs requested back pay and benefits during the period of the violation. Defendants argued that neither the FLSA nor the WARN Act applied. Prior to the matter being tried by a jury,[1] the Court, under the applicable standards for reviewing motions for summary judgement, denied Defendants' motion for summary judgment. The parties proceeded to trial. After a six-day jury trial, the jury made two findings. First, the jury found in favor of all Defendants on the FLSA claim. Second, the jury found against FCI but in favor of Defendants Michael Gulino, Daniel Muse, John Bronson, Robert Knibb, and B. Hagen Saville on the WARN Act claim and awarded each Plaintiff damages.

---

[1] Plaintiffs demanded a jury trial with respect to the FLSA claim and filed a motion requesting an advisory jury on the WARN Act claim; the Court granted the motion.

After careful deliberation, the Court will not disturb the jury's verdict with respect to the FLSA claim, and the Court accepts the jury's verdict regarding the WARN Act claim as a recommended verdict. Because the jury's verdict on the WARN Act claim was a fair and reasonable one, the Court adopts it as its own with the exception of awarding damages to Plaintiff Mia Frankel. Accordingly, the Court enters its verdict, but, at the request of the parties, refrains from entering judgment at this time. In support of its verdict, and adhering to Federal Rule of Civil Procedure 52, the Court sets forth its factual findings and conclusions of law below.[2]

## I. Findings of Fact

Many of the facts are largely uncontroverted. Plaintiffs were employed by FCI, a company that provided engineering, cybersecurity, satellite communications, and information technology services to clients across the United States, including government agencies. FCI is incorporated and headquartered in Chantilly, Virginia.

In 2016, FCI was purchased by Defendants John Bronson, Robert Knibb, and B. Hagen Saville partially with their own funds in addition to a loan from Branch Banking & Trust ("BB&T"). This loan included a two-year line of credit. The maturation date on the line of credit was July 27, 2018. Around that time, BB&T and FCI attempted to renegotiate the terms of the loan agreement. BB&T issued a short-term extension on the line of credit, extending the maturation date to October 4, 2018. As renegotiations proceeded, interactions between BB&T and FCI deteriorated and essentially became adversarial. Meanwhile, Defendant Dan Muse ("Muse"),

---

[2] "In an action tried on the facts without a jury or with an advisory jury, the [C]ourt must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision filed by the [C]ourt." Fed. R. Civ. P. 52 (a)(1). The Court's findings of fact are also contained within the conclusions of law.

2

Corporate Financial Officer of FCI, attempted to seek out alternative lenders. Due to the fiscal instability of FCI at the time, no lenders were interested in doing business with FCI. Ultimately, renegotiations with BB&T failed, and the line of credit matured on October 4, 2018. Consequently, that day, pursuant to the original lender agreement, BB&T withdrew $1.7 million from FCI's corporate bank accounts, which apparently included funds for employee payroll.

On October 8, 2018, all FCI employees were notified via electronic mail that they were terminated effective October 5, 2018. A subsequent electronic mail message sent on October 18, 2018, elaborated that FCI ceased operations due to a failed renegotiation with BB&T and acknowledged that FCI employees were not paid for work completed from September 15 to October 5, 2018. A subset of FCI employees sued FCI, FCI's owners, as well FCI's corporate officers under two different theories of liability for violations of the FLSA and the WARN Act.

The case was tried before a jury on October 15-18 and 21-22, 2019. Beginning their case-in-chief, each of the twenty-two Plaintiffs described their work history with FCI and their final salaries. Plaintiffs' testimony revealed that they all held senior-level positions at FCI, such as Director of Operations, Director of Human Resources, Senior Analyst, and Controller, and they all earned in excess of seventy-thousand dollars annually. In discussing the structure of FCI, Plaintiffs explained that FCI operated out of one location, Chantilly, Virginia; FCI's contract administration, business development, proposal development, and human resource operations occurred there. Contract deliverables[3] were sent to the Chantilly, Virginia, location for corporate approval. Although FCI employees serviced contracts off-site, those off-site locations did not belong to FCI.

---

[3] Plaintiffs testified that "contract deliverables" were contractually-required work product.

With respect to FCI ceasing operations, the parties stipulated that the Plaintiffs were not paid for hours worked from September 15, 2018, to October 5, 2018.[4] In addition, all Plaintiffs but Mia Frankel testified that they were terminated as outlined above. The Plaintiffs also confirmed the respective hours they worked, the amount of back pay, the approximation of benefits, and the unpaid expenses they believed they were owed, as set forth in Plaintiffs' Exhibit 40. Plaintiff Michael Novitsky ("Novistky") testified that the approximation of benefits was calculated by using a multiplier of 1.3. Novitsky testified that this figure was chosen because it reflects estimated benefits listed in FCI bid proposals for contracts with clients. However, further questioning revealed that the multiplier contained more than employee benefits; the multiplier also included estimations of overhead costs and general administrative expenses. In addition, Plaintiffs testified that their 401(k) accounts were inaccessible from the date of termination until December 2018. At the conclusion of Plaintiffs' cases-in-chief, Defendants moved for judgment as a matter of law, which the Court denied in part and took under advisement in part.

Then, Defendants began their case-in-chief. Defendant Muse detailed FCI's poor fiscal health over the past few years, describing contracts lost and declines in revenue. Muse also revealed that during renegotiations with BB&T, he met with other lenders. In addition, Muse testified, according to a Paycom report generated in March 2019, that FCI employed only approximately 88 full-time employees. Def. Ex. 2. On cross-examination, Muse recalled that he stated in a deposition that 150 employees worked at FCI, which was reflected on FCI's website.

---

[4] Plaintiffs testified that the period of non-payment began on either September 15 or 16, 2018. It is noted that some of the individual Plaintiffs did perform "close out work" for FCI and were paid for that performance. This does not appear to be a matter of dispute between the parties.

4

Plaintiffs' counsel read over 22 names of employees not included in that Paycom report employed by FCI six months prior to the date of termination. These names were confirmed by Muse.

At the conclusion of Defendants' cases-in-chief, Defendants again moved for judgment as a matter of law essentially on the same grounds articulated in their motion for summary judgment, which the Court denied in part and took under advisement in part. Plaintiffs did not present rebuttal evidence. After listening to instructions and then hearing closing arguments, the jury deliberated over the course of two days and returned their verdict in favor of all Defendants on the FLSA claim, and against FCI, but in favor of Defendants Gulino, Muse, Bronson, Knibb, and Saville on the WARN Act claim. The jury awarded a specific sum of damages to each Plaintiff for FCI's WARN act violation.

## II. Conclusions of Law

As the Plaintiffs agreed that recovering under both the FLSA and the WARN Act would be duplicative, and because the Court adopts in significant part the jury verdict on the WARN Act claim, the Court will not disturb the jury's verdict in favor of Defendants on the FLSA claim, and thus dispenses with further analysis on that claim.

"The WARN Act was enacted in 1988 to provide notice of sudden, significant employment loss so that workers could seek alternative employment and their communities could prepare for the [ensuing] economic disruption." *Meson v. GATX Technology Services Corp.*, 507 F.3d 803, 808 (4th Cir. 2007). Pursuant to the WARN Act, "certain employers [are required] to provide affected employees with sixty-days notice of a plant closing or 'mass layoff.'" *Id.* (quoting 29 U.S.C. § 2102(a)). An "affected employee" is one "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). Termination is such an employment loss. 29 U.S.C. § 2101

(a)(6). The term "'employer' means any business enterprise that employees 100 or more employees, excluding part-time employees." 29 U.S.C. § 2101(a)(1)(A). To be considered a full-time employee, an individual must have been employed "for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

Defendant FCI is an "employer" for WARN Act purposes. Notice was required to be given 60 days prior to the October 5, 2018, termination date, and six months preceding that date is February 9, 2018. Thus, the number of full-time employees must have been counted as of February 9, 2018. On cross-examination of Muse, Plaintiffs' counsel supplemented the March 2019 Paycom report with the names of employees employed as of February 9, 2018. Accordingly, FCI employed over 100 full-time employees six months prior to the notification period. Therefore, because FCI was a "business entity" that employed over 100 full-time employees, FCI is an "employer" for WARN Act purposes.

Relevant here, a "'plant closing' means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). Regulations define what constitutes a "single site of employment." 20 C.F.R. § 639.3(i).[5] The regulations provide that "[a] single site of employment can refer to either a single location or a group of contiguous locations," (i)(1), and indicate that "there may be several single sites of employment within a single building. . . if separate employers conduct activities within such building." (i)(2). "Separate buildings or areas which are not directly connected or in immediate

---

[5] These regulations are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Meson*, 507 F.3d at 808-09 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

6

proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." (i)(3). And "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." (i)(4). In addition,

> [f]or workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g. railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report

is their single site of employment. (i)(6). Subpart (i)(8) sets forth a "catch-all" provision, noting that the term "appl[ies] to truly unusual organizational situations."

What occurred constituted a "plant closing." FCI ceased operations and all approximately 150 employees were terminated effective October 5, 2018. Considering the contours placed on the term "single site of employment," it is clear that Chantilly, Virginia, is FCI's only "single site of employment." FCI was headquartered in and operated out of Chantilly, Virginia. Although FCI employees travelled across the United States and serviced contracts at various clients' facilities, those clients' facilities did not belong to FCI. Thus, Plaintiffs were entitled to WARN Act protection.

It is undisputed that FCI did not provide written notice of termination until the electronic mail sent on October 8, 2018. Two affirmative defenses were raised pursuant to 29 U.S.C. §§ 2102(b)(1) and (b)(2). The relevant subsections provide:

> (1) An employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

7

> (2)(A) An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.
>
> ****
>
> (3) An employer relying on this subsection shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.

FCI's affirmative defenses fail. FCI's revenues declined from 2016 until it ceased operations. The line of credit associated with the BB&T loan was set to mature in late July 2018. Only then did Muse begin to seek out capital via other lenders. All three lenders that Muse met with indicated that they would not do business with FCI at that time due to its current financial instability. In addition, FCI can hardly contend that what occurred was unforeseeable. The line of credit extended as part of the BB&T loan agreement matured on July 27, 2018. BB&T issued an extension on the maturation date to October 4, 2018, because of the renegotiations of the terms of the loan agreement. Failed renegotiations led to the expiration of the extended maturity date, thereby resulting in BB&T's withdrawal of funds from FCI's corporate bank accounts.

With respect to damages,

> (a)(1) [a]ny employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers from employment loss as a result of such closing or layoff for—
> > (A) back pay for each day of violation at a rate of compensation not less than the higher of—
> > > (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
> > > (ii) the final regular rate received by such employee; and
>
> (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.

> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

Accordingly, FCI is "liable to each affected employee for backpay, benefits, and attorney's fees" for 60 days. *Meson*, 507 F.3d at 808 (citing 29 U.S.C. § 2104(a)). Considering the damages awards generally, the jury was presented with Plaintiffs' Ex. 40. Plaintiffs' Ex. 40 contained their damages requests, including regular pay, earned vacation hours, vacation pay, unreimbursed expenses, and an approximation of benefits owed for the period of the violation. Plaintiff Notvitsky testified that the amount of benefits owed was calculated by applying a multiplier of "1.3." Testimony revealed that the multiplier included more than employee benefits. As the jury awarded less than the requested damages, it is clear that the jury did not apply the multiplier as advanced by Plaintiffs and did not accept that Plaintiffs were entitled to all sums listed.

The Court agrees that the basis of the multiplier reflected more than what Plaintiffs were entitled to under the WARN Act. Thus, because the jury rejected the multiplier and awarded each Plaintiff a combination of back pay, vacation pay, employee benefits, and unreimbursed expenses, the Court accepts the awards of damages as its own with the following exception.

The Court declines to adopt the damages awarded to Plaintiff Mia Frankel. To her credit, Frankel testified that she left FCI's employ on October 4, 2018. Although Frankel testified that she was "constructively terminated," the Court finds that Frankel's conduct constituted a "voluntary departure" pursuant to 29 U.S.C. § 2101 (a)(6) (defining "the term 'employment loss' [as]. . . an employment termination, other than a discharge for cause, voluntary departure, or retirement").

Thus, the Court awards damages to the Plaintiffs as follows: Robert Mark Schmidt-$15,475, John McDade-$16,842, David Ae-$14,988, Stacy De La Hoz-$11,524, Andrea Hallock-

$20,491, Timothy Rademacher-$11,470, Bruce Morris-$11,675, Gerald Lebel-$15,864, Tommy Rembert-$12,476, Isaac Gusman, Sr.-$12,818, Craig Chuba-$14,228, Darrin Eaton-$13,006, Laura Knight-$18,364, Michael Novitsky-$8,705, LaDeana Smith-$12,801, Tucker Newberry-$21,850, Antero Lacot-$13,830, Thuy Nguyen-$11,475, Kelly Hood-$12,186, Jenifer Moorhead-$11,825, and Robert Boerjan-$17,490.

### III. Conclusion

For the foregoing reasons, the Court issues its verdict in favor of Defendants on the FLSA claim and against FCI but in favor of Defendants Gulino, Muse, Bronson, Knibb, and Saville on the WARN Act claim.

At the request of the parties, the Court withholds entering judgment in this matter until the Court resolves any post-trial motions.

It is SO ORDERED.

November 5, 2019
Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge