**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **ROBERT MARK SCHMIDT, et al.,**   ) | |
| )  | |
| **Plaintiffs,**   )  | |
| )  | |
| **v.**   )  | **Case No. 18-1472 (RDA/JFA)** |
| )  | |
| **FCI ENTERPRISES LLC, et al.,**   )  | |
| )  | |
| **Defendants.**   )  | |
| _____)  | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS'FEES AND COSTS**

Pursuant to Federal Rule of Civil Procedure 54 and 29 U.S.C.S. § 2104, Plaintiffs Robert

Mark Schmidt, John McDade, David Are, Stacy De La Hoz, Andrea Hallock, Timothy

Rademacher, Bruce Morris, Gerald Lebel, Tommy Rembert, Isaac Gusman Sr., Craig Chuba,

Darrin Eaton, Laura Knight, Michael Novitsky, Mia Frankel, LaDeana Smith, Tucker Newberry,

Antero Lacot, Thuy Nguyen, Kelly Hood, Jenifer Moorhead, and Robert Boerjan (hereby

collectively referred to as the "Plaintiffs"), hereby submit this Memorandum of Law in support of

their Motion for Attorneys' Fees and Costs. For the reasons set forth below, Plaintiffs request that

the Court award attorneys' fees in the amount of $456,070.00 and costs in the amount of

$34,920.03 against Defendant FCI Enterprises LLC (hereinafter referred to as "FCI" or

"Defendant").

**INTRODUCTION**

On October 8, 2018, FCI terminated all of its employees and shutdown its operations.  FCI

employees were notified of their mass termination and FCI's shutdown by short email and letter

on October 8, 2018.  Defendants have admitted that the October 8, 2018 email and letter did not

provide FCI employees with a statement of reasons for their termination.  [Dkt. No. 17, PageID# 170 at ¶ 33-34].  On October 18, 2018, Defendants disseminated an email to all former FCI employees, including the Plaintiffs acknowledging that FCI failed to pay its employees for 3 weeks of work prior to termination, and that Defendants did not intend to pay those wages with any proceeds FCI received.  [Dkt. No. 14-2, PageID# 133; and Dkt. No. 79-12, PageID# 1988-89 at No. 48].

On November 29, 2018, Plaintiffs filed their Complaint [Dkt. No. 1] against FCI Enterprises LLC ("FCI"), Robert Knibb, B. Hagen Saville, John Bronson, Michael Gulino, and Daniel Muse (collectively referred to as "Defendants") alleging violations of the Worker Adjustment and Retraining Notification Act ("WARN Act") and the Fair Labor Standards Act ("FLSA").  In response to the lawsuit, and throughout litigation, Defendants have pursued an aggressive motions practice against Plaintiffs.

First, Defendants filed a Motion to Dismiss Plaintiffs' WARN Act and FLSA claims.  [Dkt. No. 11].  On January 22, 2019, this Court issued an Order [Dkt. No. 16] denying the Motion to Dismiss on all grounds.  Second, Defendants filed a Motion for Rule 7(a)(7) Reply.  [Dkt. No. 18]. On March 1, 2019, this Court issued an Order [Dkt. No. 27] denying Defendants' request for a Rule 7(a)(7) Reply from Plaintiffs.  Third, Defendants filed a Motion for Summary Judgment [Dkt. No. 67] as to both Plaintiffs' WARN Act and FLSA claims.  On October 1, 2019, this Court issued an Order [Dkt. No. 89] denying Defendants' request for summary judgment in their favor.

This case proceeded to trial on Plaintiffs' claims and on October 22, 2019, the jury returned a specific sum of damages in favor of each Plaintiff for FCI's WARN Act violation, and in favor of Defendants for alleged FLSA violations.  [Dkt. No. 125, PageID# 2830].   As the prevailing party in this litigation, Plaintiffs are entitled to their reasonable attorneys' fees and costs pursuant

to 29 U.S.C.S. § 2104 and Federal Rule of Civil Procedure 54.  Moreover, Plaintiffs requested attorneys' fees and costs are reasonable. Accordingly, and for the reasons discussed below, Plaintiffs' Motion should be granted and Defendant FCI should be ordered to pay Plaintiffs' attorneys' fees and costs.

**ARGUMENT**

**I.      PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES PURSUANT TO THE WARN ACT.**

The WARN Act provides that "[i]n any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."  29 U.S.C.S. § 2104(a)(6).  In its November 5, 2019 Memorandum Opinion and Order, the Court predominantly[1] adopted the jury's verdict finding in favor of the Plaintiffs under the WARN Act.

**II.      PLAINTIFFS' ATTORNEYS' FEES AND COSTS ARE REASONABLE.**

To determine the appropriate amount of attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). When determining what constitutes a "reasonable" number of hours and rate, the Fourth Circuit has instructed that a district court must consider the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). The 12 "*Johnson* Factors" are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which

---

[1] This Court did not find in favor of Plaintiff Mia Frankel and excluded her from any award.  [Dkt. No. 125, PageID# 2834].

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* After determining the lodestar figure, the court may "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244. Finally, "once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* However, because a "strong presumption" exists that the lodestar figure represents a reasonable fee, that presumption may be overcome only in "rare circumstances." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).

### A.      Plaintiffs are Entitled to an Award of Attorneys' Fees Under the "*Johnson* Factors".

Because "the starting point in establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate," Plaintiffs will first address those two issues. *Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 812 (E.D. Va. 2008) (citing *Hensley*, 461 U.S. at 433).  Plaintiffs will then address the subsequent *Johnson* Factors.

#### 1.   The Time and Labor Expended by Plaintiffs' Counsel Were Reasonable.

Plaintiffs' request for attorneys' fees is proportional to the reasonable amount of time and labor spent litigating the WARN Act issues in this matter. This case concerned an important and novel dispute under the WARN Act.  As a result, this matter was vigorously contested and involved significant discovery and motions practice.

For example, because FCI was asserting that 1) client government locations as single sites of employment even though it neither owned nor controlled those locations, and 2) that FCI employees received little supervision or instruction in their daily job functions from FCI headquarters, FCI issued interrogatories, requests for admissions and documents requests to each

of the 22 Plaintiffs in this effort.  Likewise, FCI deposed each of the 22 Plaintiffs and insisted on doing that in person even though Plaintiffs' counsel requested accommodations be made to depose certain witnesses via telephone or video due to living in California, Georgia, Florida and Colorado.

Similarly, because FCI asserted the faltering business or unforeseeable business circumstances affirmative defenses to Plaintiffs' WARN Act claim, as well as blaming FCI's shutdown on nonparty BB&T, Plaintiffs had to pursue relevant documents and deposition testimony, not only from the decision makers for FCI (Defendants Knibb, Saville, Bronson, Gulino and Muse), but also from BB&T as well as the BB&T representatives involved in the loan and credit negotiations with FCI.  Moreover, Plaintiffs' efforts to pursue documents from FCI in discovery was unnecessarily delayed and increased as a result of Defendant FCI's failure in its discovery obligations.  [Dkt. No. 38]; see also May 3, 2019 Hr. Tr. at 3:13 – 11:15.

Moreover, Defendant FCI filed multiple motions to attack the validity of Plaintiffs' WARN Act claim. Whether Plaintiffs could make out the elements necessary to allege and prove a WARN Act violation was hotly contested by FCI. Plaintiffs' claims survived an aggressive motions practice by Defendants, which included a Motion to Dismiss, a Motion for Rule 7(a)(7) Reply, and a Motion for Summary Judgment.  Each of Defendant FCI's motions required initial research and opposition briefing, and oral argument.  Ultimately Defendant FCI's motions were denied and Plaintiffs' claims proceeded through trial.

The parties also held a five-day jury trial after which the jury returned a verdict against Defendant FCI on Plaintiffs' WARN Act claim.  [Dkt. No. 125].  Preparation for trial required substantial time and effort, including review and analysis of applicable law and existing evidence; preparation of trial exhibits and witnesses; development of a strategy for trial; and research and drafting of proposed jury instructions, voir dire, and a special verdict form. *See* Declaration of

Brad D. Weiss ("Weiss Decl.") at ¶¶ 15.  Moreover, after trial, Defendant FCI filed a Rule 50 Motion for Judgment [Dkt. No. 127 & 128] which will necessitate research, briefing, and oral argument

Finally, Plaintiffs' litigation team was leanly staffed and consisted of three attorneys: two partners, and one associate. *See* Weiss Decl. at Ex. A, ¶¶ 10-11. The three attorneys constituting Plaintiffs' litigation team represent the entirety of the time billed to Plaintiffs in this matter with the Mrs. MacCumbee and Mr. Salisbury tasked with the majority of the research and drafting responsibilities. *See* Weiss Decl. ¶ 17(b); Ex. A to Weiss Decl. Lean staffing and appropriate delegation of tasks promoted economic efficiency and avoided duplication of work and billing in this case. *See* Weiss Decl. ¶ 17(h).

All of the work performed by Plaintiffs' counsel was reasonable and necessary in order for Plaintiffs to successfully enforce their legal rights under the WARN Act.  This fact is bolstered by the degree of success Plaintiffs achieved in this matter. Accordingly, this factor weighs in favor of a full award of the fees sought.

### 2.   The Hourly Rates for Plaintiffs' Counsel Are Reasonable.

Courts award a prevailing plaintiff "the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).  In determining the prevailing rate, a court must take into account "the attorney's true market value" by compensating the attorney "at the rate that the attorney would [ordinarily] receive." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010).

In this case, the hourly rates for Plaintiffs' attorneys are: $550 for a partner with approximately 38 years of experience; $475.00 for a partner approximately 18 years of experience; and $310.00 for an associate with three years of experience. *See* Weiss Decl. ¶¶2, 10-12. These rates fall well within, if not slightly below, the "*Vienna Metro* Matrix," first adopted by this Court

in *Vienna Metro, LLC v. Pulte Home Corp.*, No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011), as accepted hourly rates for attorneys practicing in Northern Virginia. *See* Ex. F to Delany Decl.; *see also Tech Sys., Inc. v. Pyles*, No. 1:12-CV-374 GBL/JFA, 2013 WL 4033650, at *6 (E.D. Va. Aug. 6, 2013) (accepting *Vienna Metro* Matrix as indicator of reasonable rate in determining an award of attorneys' fees); *Taylor v. Republic Servs., Inc.*, No. 1:12-CV-00523-GBL, 2014 WL 325169 (E.D. Va. Jan. 29,2014) (same).  The *Vienna Metro* Matrix provides as follows:

| *Vienna Metro* Matrix (2011 Range of Hourly Rates in Northern Virginia) | | | | | | |
|---|---|---|---|---|---|---|
| Years of Experience | Paralegal | 1-3 years | 4-7 years | 8-10 years | 11-19 years | 20+ years |
| Hourly Rate | $130-350 | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

As demonstrated above, the rate for each identified attorney clearly falls within the acceptable range of hourly rates for attorneys with a commensurate level of experience. *See* Weiss Decl. ¶¶ 2, 10-12; Declaration of A. Hugo Blankingship, III ("Blankingship Decl.") ¶¶ 12-13. Further, the *Vienna Metro* Matrix is based on attorney rates from several years ago and does not represent any rate increases that have occurred in the legal industry over the past five years. Accordingly, the hourly rates for Plaintiffs' counsel are reasonable and similar to those charged within the relevant legal community of Northern Virginia.

### 3.  The Novelty and Difficulty of Questions Raised.

This case presented important legal questions to Plaintiffs regarding their rights under the WARN Act.  Indeed, Defendant FCI vigorously contested whether the WARN Act was applicable to Plaintiffs.  In WARN Act cases, it is typically the plaintiff(s) attempting to aggregate various sites of employment of their employer in order to establish the minimum 50 or more employees at

a single site of employment to establish a covered plant closing or mass layoff under 20 C.F.R. § 693.3(b) or (c).  However, in the instant case, Defendant FCI was attempting to benefit from various military or government client locations, of which FCI has no common ownership or control of, to argue that those locations are separate sites of employment for which FCI can claim as its own separate and single sites of employment in an effort to avoid coverage and liability under the WARN Act.  Accordingly, this factor and the time expended by Plaintiffs' counsel support an award of Plaintiffs' requested attorneys' fees.

### 4.   The Skill Required to Perform Legal Services Rendered.

Plaintiffs' counsel have significant experience in litigating employment-related issues. *See* Weiss Decl. ¶15. Their experience and skills allowed them to successfully perform the services rendered on behalf of Plaintiffs in this case. *See* Weiss Decl. ¶¶ 2, 10-12. Indeed, Plaintiffs' counsel were able to defeat the various motion filed by Defendant FCI and, at trial, the jury returned a verdict in favor of the Plaintiffs on the WARN Act, of which this Court substantially adopted. [Dkt. No. 125].  This factor supports an award of attorneys' fees as requested by Plaintiffs.

### 5.   The Attorneys' Opportunity Costs in Pressing the Instant Litigation.

As demonstrated in their fee request, counsel for Plaintiffs were required to devote significant time and effort to litigate this case. Moreover, cases in this jurisdiction move quickly, as evidenced by the fact that this case moved from the filing of the Complaint to trial in less than a year. These factors limited the volume of other work that Plaintiffs' counsel could undertake during this time period. *See* Weiss Decl. ¶ 17(c). This factor supports an award of attorneys' fees as requested by Plaintiffs.

**6.  The Customary Fee for Like Work.**

This type of commercial litigation is ordinarily undertaken on an hourly basis. During this litigation, Plaintiffs' counsel charged their normal hourly rate for its services. *See* Weiss Decl. ¶¶ 2, 10-12. As described above and illustrated through the *Vienna Metro* Matrix, the fees charged by Plaintiffs' counsel are within the acceptable range, if not slightly less, for commercial litigation in the Northern Virginia market. *See* Weiss Decl. ¶17(d); Blankingship Decl. ¶¶ 12-13, 26. Accordingly, this factor supports an award of attorneys' fees as requested by Plaintiffs.

**7.  The Attorneys' Expectations at the Outset of the Litigation.**

When hired by Plaintiffs at the outset of this litigation, counsel expected to be compensated on an hourly basis at the established rates. *See* Weiss Decl. ¶ 4. This factor supports an award of attorneys' fees as requested by Plaintiffs.

**8.  The Time Limitations Imposed by the Client or Circumstances.**

As described above, cases in this jurisdiction move quickly, as evidenced by the fact that this case moved from the filing of the Complaint to trial in less than a year. Despite these time constraints, Plaintiffs successfully prevailed in this matter. Accordingly, this factor supports an award of attorneys' fees as requested by Plaintiffs.

**9.  The Amount in Controversy and the Results Obtained.**

By any measure, Plaintiffs were successful in this matter. Plaintiffs sought remedies under two claims when they filed the Complaint: (1) to obtain backpay and benefits under the WARN Act; and (2) to obtain minimum and/or overtime wages under the FLSA as a setoff to their WARN Act damages. Plaintiffs were successful in obtaining a substantial award under the WARN Act.

The jury awarded damages to each of the Plaintiffs in favor of the WARN Act totaling $306,136.00, which the Court later modified to $299,383.00 in total damages. [Dkt. No 123 and

125].  In its Memorandum Opinion and Order, this Court agreed with Plaintiffs that the WARN Act was meant to apply to the Plaintiffs and that the shutdown of FCI constituted a plant closing. The Court also agreed with Plaintiffs that although some FCI employees travelled to different locations and serviced contracts at client locations, those client facilities did not belong to FCI and, therefore, FCI could not use those client locations as FCI single sites of employment to get around the WARN Act's notice requirements.  [Dkt. No. 125, PageID# 2831-2832].  Likewise, the Court also agreed with Plaintiffs that FCI's affirmative defenses to the WARN Act were not applicable. [Dkt. No. 125, PageID# 2833].   Thus, Plaintiffs were successful in pursuing the WARN Act claim and this success supports an award of attorneys' fees as requested by Plaintiffs.

### 10. The Experience, Reputation and Ability of Attorneys.

Plaintiffs' attorneys have considerable litigation experience in similar employment-related issues. *See* Weiss Decl. ¶¶ 2, 5.  Plaintiffs' attorneys have demonstrated significant ability, as evidenced in the results obtained in this matter. *See also* Blankingship Decl. ¶¶ 17-18, 20-23, 29. This factor supports an award of attorneys' fees as requested by Plaintiffs.

### 11. The Undesirability of Case Within the Legal Community in Which the Suit Arose

While this factor may not necessarily apply to this case, a failure to provide an award may inhibit the ability of other parties attempting to enforce a wage claim right to attorneys' fees from finding counsel who are willing to litigate for fear of nonpayment.  An award of attorneys' fees would avoid such a deterrent effect.

### 12. The Nature and Length of the Professional Relationship Between Attorney and Client.

Plaintiffs' counsel have only represented the Plaintiffs in the above-captioned matter. In this case, the parties have agreed that undersigned counsel will be compensated for the legal

services rendered on an hourly basis.  This factor supports an award of Plaintiffs' requested attorneys' fees.

### 13. Attorneys' Fees Awards in Similar Cases.

Plaintiffs seek an attorneys' fee award of $456,070.00, which has already been reduced to remove redundant work or work not otherwise related to the WARN Act claim. This award is reasonable when compared to awards in other complex employment litigation cases. *See*, *e.g.*, *W. Insulation, LP v. Moore*, 362 F. App'x 375 (4th Cir. 2010) (awarding $270,021.29 in attorneys' fees). Moreover, as illustrated in the *Vienna Metro* Matrix, the hourly rates charged by Plaintiffs' attorneys are reasonable and Virginia courts have accepted similar rates as reasonable in determining attorneys' fee awards. *See*, *e.g.*, *Vienna Metro, LLC*, at *11-13; *Tech Sys., Inc.*, 2013 WL 4033650, at *6; *Taylor*, 2014 WL 325169 at *4-5. Accordingly, this factor weighs in support of an award as requested by Plaintiffs.

### 14. The Court Should Not Reduce the Fee Award On the Basis of the FLSA Claim Because That Claim was Related to and Shared a Common Core of Facts With Plaintiffs' Successful WARN Act Claim.

While Plaintiffs were unsuccessful in their FLSA claim, courts do not automatically preclude recovery of attorneys' fees for time spent on unsuccessful claims. Rather, courts focus on whether the unsuccessful claims share a "common core of facts" to the claim or claims upon which the prevailing party was ultimately successful.  In *Tech Systems, Inc. v. Pyles*, No. 1:12-CV-374 GBL/JFA, 2013 WL 4033650 (E.D. Va. Aug. 6, 2013), the plaintiff sought attorneys' fees after succeeding on five of its seven claims after a former employee sabotaged the company's computer servers and disclosed confidential information in violation of company policy. The court did not reduce any of the fees sought despite the fact that plaintiff's breach of contract and misappropriation of trade secrets claims were unsuccessful, as "[b]oth claims arose from facts

surrounding [the employee's] sabotage of the TSI server and the unauthorized emails that [the employee] sent once she was terminated from her position at TSI." 2013 WL 4033650, at *7. Therefore, the court continued, "[a]lthough Counts III and VI were unsuccessful, they were still related to TSI's successful claims and shared a common core of facts." *Id.* Here, just as in *Tech Systems*, Plaintiffs' unsuccessful FLSA claim was very much related to Plaintiffs' successful WARN Act claim as they share a common core of facts. Indeed, each of Plaintiffs' claims arose from the very same conduct – FCI's immediate termination of its employees and shutdown of its operations without paying them for work performed.  Therefore, the Court should not further reduce the fee award as it relates to the time expended on Plaintiffs' FLSA claim.

**15. Plaintiffs' Overall Success Dictates That There Should be No Further Reduction of the Lodestar Amount.**

In determining what constitutes a reasonable fee award, the Supreme Court has instructed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and, indeed, in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. As described in its prior analysis of the *Johnson* Factors, Plaintiffs were extremely successful in this case.

Though Plaintiffs were awarded $299,383.00 in damages, such an award does not suggest a reduction of the fee award is warranted, as courts "do not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007).  Indeed, Virginia courts award fee requests in full where the requesting party was overwhelmingly successful despite its failure to achieve 100% success. *See*, *e.g.*, *Tech Sys., Inc.*, 2013 WL 4033650 (awarding 100% of attorneys' fees sought by the prevailing party despite two unsuccessful claims).

12

Finally, "attorney's fees are not unreasonable merely because they exceed the amount of damages recovered." *Dollar Tree Stores, Inc. v. Centro NP LLC*, No. 2:07CV608, 2008 WL 9371766, at \*5 (E.D. Va. Dec. 5, 2008) (awarding $618,056.50 in attorneys' fees where only $255,000 was recovered in a breach of contract claim where plaintiff's counsel "achieved excellent results for their client"); *see also Dollar Tree Stores, Inc. v. Norcor Bolingbrook Associates, LLC*, 699 F. Supp. 2d 766, 771 (E.D. Va. 2009) (instructing that "the fact that the amount of fees requested exceeds the amount of monetary damages awarded is not necessarily of any particular significance" and awarding $415,043.50 in attorneys' fees where only $248,459.22 was recovered in a breach of contract claim). This is particularly true where, as here, Defendants multiplied the proceedings with additional motions and oral argument, and threats of sanctions throughout litigation.

Moreover, the Supreme Court has expressly rejected any requirement of proportionality between a fee award and recovered damages and has reasoned that such a requirement would reduce recovery where the relief obtained is nonpecuniary in nature. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986); *see also Cooper v. Dyke*, 814 F.2d 941, 951 (4th Cir. 1987) ("fee awards need not be proportionate to amount of damages recovered"); *see also Saleh v. Moore*, 95 F. Supp. 2d 555, 575-78 (E.D. Va. 2000) (awarding attorneys' fees of $750,000 where plaintiff recovered only $117,349 in damages but was also awarded injunctive relief). Accordingly, because Plaintiffs were overwhelmingly successful in enforcing its legal rights under the WARN Act and seeking compensation for its damages, Plaintiffs' success in this matter supports an award of attorneys' fees as requested.

### B.      Plaintiffs' are Entitled to Reasonable Costs.

In addition to attorneys' fees, "the Fourth Circuit has held that [Federal Rule of Civil Procedure] 54(d)(1) creates a presumption that the prevailing party will be awarded costs." *Taylor*,

2014 WL 325169, at *9 (citing *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999)). As illustrated above, Plaintiffs were the prevailing party in this matter and the costs they seek are reasonable and consistent with those awarded by federal courts. *See*, *e.g.*, *Id.*, at *9-10 (awarding costs to the prevailing party for clerk fees, deposition transcripts, and "miscellaneous services," including costs associated with copying and duplication, mailings, and messenger service). Moreover, Plaintiffs' counsel do not seek reimbursement for costs related to meals, parking, or local travel to and from the Court. Accordingly, Plaintiffs seek an award of costs in the amount of $34,920.03, which are illustrated in Plaintiffs' billing records, invoices, Weiss Declaration, and accompanying Bill of Costs.  Pending the outcome by this Court of Plaintiffs' Motion for Attorneys' Fees and Costs, resolution of any other post-trial motions, and entry of final judgment, Plaintiffs will supplement or revise its Bill of Costs submission accordingly to the Court's determinations.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Honorable Court award attorneys' fees in the amount of $456.070.00 and costs in the amount of $34,920.03.

Respectfully Submitted,

_____/s/_____
Brad D. Weiss (Va. Bar # 22389)
Kimberly S. MacCumbee (*Pro Hac Vice* Admission)
Travis F. Salisbury (Va. Bar # 91044)
CHARAPP & WEISS, LLP
8180 Greensboro Drive, Suite 1000
McLean, Virginia 22102
(703) 564-0220 (office)
(703) 564-0221 (facsimile)
brad.weiss@cwattorneys.com
kimberly.maccumbee@cwattorneys.com
Travis.Salisbury@cwattorneys.com
*Counsel for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the foregoing was served electronically on all counsel of record by the Electronic Case Filing System on November 19, 2019.

Respectfully Submitted,


_____/s/_____

Brad D. Weiss (Va. Bar # 22389)
Travis F. Salisbury (Va. Bar # 91044)
Kimberly S. MacCumbee (*Pro Hac Vice* Admission)
CHARAPP & WEISS, LLP
8180 Greensboro Drive, Suite 1000
McLean, Virginia 22102
(703) 564-0220 (office)
(703) 564-0221 (facsimile)
brad.weiss@cwattorneys.com
Travis.Salisbury@cwattorneys.com
Kimberly.maccumbee@cwattorneys.com
*Counsel for Plaintiffs*